UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

AMANDAYVETTE JEAN-CHARLES,

                Plaintiff,

    -against-

AMERISOURCEBERGEN DRUG
CORPORATION,

                Defendant.

-----------------------------------------------------------X

Case No.


**COMPLAINT**


**PLAINTIFF DEMANDS A
TRIAL BY JURY**

       Plaintiff, AMANDAYVETTE JEAN-CHARLES, by Plaintiff's attorneys, PHILLIPS &

ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of Defendant, upon

information and belief, as follows:

<h3 align="center">Nature of the Case</h3>

1.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

        U.S.C. § 2000e, *et seq.*; and the New York State Human Rights Law ("NYSHRL"), New

        York State Executive Law § 296, *et seq.* Plaintiff seeks damages to redress the injuries she

        has suffered as a result of being discriminated against on the basis of her sex/gender

        (female), subjected to a hostile work environment and constructively discharged as a result

        of Defendant's failure to remediate the sexual harassment she suffered.

<h3 align="center">Jurisdiction and Venue</h3>

2.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331

        and 1343.

3.     This Court has supplemental jurisdiction over Plaintiff's claims brought under state law

        pursuant to 28 U.S.C. § 1367.

**Procedural Prerequisites**

4.      Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal

Employment Opportunity Commission ("EEOC").

5.      Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated March 24,

2022 with respect to the herein charges of discrimination.  A copy of the Notice is annexed

hereto as Exhibit A.

6.      This Action is being commenced within ninety (90) days of receipt of said Notice.

**Parties**

7.      Plaintiff is a resident of the County of Orange, State of New York.

8.      At all times material, Defendant AMERISOURCEBERGEN DRUG CORPORATION

(hereinafter "AMERISOURCE") was and is a domestic business corporation duly existing

pursuant to and by virtue of the laws of the State of Delaware and operating in the State of

New York.  The physical address of Defendant AMERISOURCE's registered agent, The

Corporation Trust Company, is located at Corporation Trust Center, 1209 Orange Street,

Wilmington, Delaware 19801.

9.      At all times material, Defendant AMERISOURCE owned, operated, and controlled a

nationwide medical supply distribution service.

10.     At all times material, Defendant AMERISOURCE owned, operated, and controlled

numerous locations in the State of New York, including the location at issue located at 108

Route 17K, Suite 1, Newburgh, New York 12550 (hereinafter "the Location").

11.     At all times material, Defendant AMERISOURCE was engaged in an industry affecting

commerce within the meaning of 42 U.S.C. § 2000e.

12.   At all times material, Defendant AMERISOURCE had 15 or more employees for each working day in each 20 or more calendar weeks in the current or preceding calendar year.

13.   At all times material, Plaintiff was an employee of Defendant AMERISOURCE.

14.   At all times material, Defendant AMERISOURCE was Plaintiff's employer under Title VII.

15.   At all times material, Defendant AMERISOURCE was Plaintiff's employer under the NYSHRL.

16.   At all times material, all parties mentioned herein worked and/or continue to be employed at the Location.

## Material Facts

17.   In or around December 2019, Plaintiff began working for Defendant AMERISOURCE at the Location as a Warehouse Associate.

18.   Plaintiff earned approximately $740.00 per week, or approximately $39,000 per year.

19.   Plaintiff was qualified for her position and always performed her duties well.

20.   Shortly after starting her employment at Defendant AMERISOURCE, Plaintiff began facing sexual harassment.

21.   In or around December 2019, Plaintiff's co-worker, Hasani Weston, approached Plaintiff and asked for her phone number.  Plaintiff declined to provide it to him.

22.   Shortly thereafter, Mr. Weston began approaching Plaintiff discussing his personal life, including how his child's mother is controlling. Plaintiff was confused and ignored Mr. Weston's strange remarks.

23.   In or around December 2019, Plaintiff was working in the Audit Department with lead associate, Tyshawn Faison.

24.     In or around January 2020, Mr. Weston again asked Plaintiff for her phone number.  Mr. Weston explained that he lived alone so he would make time to speak with Plaintiff over the phone.  Mr. Weston continued to say that he doesn't live far from the Location, so she could visit him.  Plaintiff was disgusted and declined Mr. Weston's advances.

25.     On or about February 24, 2020, Mr. Weston asked Plaintiff out on a date.  Plaintiff, again, declined Mr. Weston's offer and stated that she had a boyfriend.  Mr. Weston responded, in sum and substance, "I don't want to cause any problems with him, I am not an aggressive person."

26.     Despite Plaintiff informing Mr. Weston that she was in a relationship, Mr. Weston continued to go out of his way to speak to Plaintiff and stared at Plaintiff while she was working.  Plaintiff was extremely uncomfortable.

27.     Plaintiff began ignoring Mr. Weston in hopes that he would stop with his sexual advances, which in turn, made him aggravated.

28.     At one point, Mr. Weston approached Plaintiff and asked why she stopped speaking to him. In an attempt to not make Mr. Weston angrier, Plaintiff stated, in sum and substance "there is no problem. I'm just tired and don't want to talk all the time."  Plaintiff quickly walked away from Mr. Weston.

29.     In or around March 2020, Plaintiff began working near a fellow warehouse associate, "Alfonso." "Alfonso" approached Plaintiff multiple times and asked if she was single or if she "had a man." Disgusted, Plaintiff ignored "Alfonso" and walked away.

30.     In or around March 2020, "Alfonso" began making inappropriate sexual innuendos to Plaintiff, such as licking his lips in her direction or winking at her.  Plaintiff was disgusted and appalled by "Alfonso's" unwanted sexual advances.

4

31.     In or around March 2020, the COVID-19 pandemic began to seriously impact the United

        States.

32.     In or around April 2020, a nationwide mask mandate went into effect.

33.     In or around April 2020, Plaintiff was providing her co-workers with reusable masks.

        Plaintiff provided two masks to Mr. Weston, and in response, Mr. Weston again asked for

        Plaintiff's phone number.  Plaintiff responded, in sum and substance, "you don't need my

        number – we both work here."

34.     Later that same evening, Plaintiff was on her lunch break.  Mr. Weston approached Plaintiff

        and provided Plaintiff his phone number on a crumpled napkin.  Plaintiff placed the napkin

        on the table with the rest of the napkins she had on the table, with the intention of throwing

        it away.  Throughout the duration of Plaintiff's lunch break, Mr. Weston was staring at her.

35.     When her break was over, Plaintiff discarded her trash, however, did not throw away any

        of the napkins she had, in fear of how Mr. Weston would react if she threw away his phone

        number.  Mr. Weston approached Plaintiff and stated in sum and substance, "did you throw

        away my number?"  Plaintiff responded "no," and showed him the napkins she had in her

        hand.  When Plaintiff left the break room, Plaintiff immediately went to the restroom and

        threw away the napkins, including the napkin with Mr. Weston's number.

36.     In or around early June 2020, Plaintiff and Mr. Faison engaged in a conversation regarding

        transferring departments within Defendant AMERISOURCE.   Mr. Faison stated to

        Plaintiff, in sum and substance, "usually when associates transfer there's a problem to

        complain about, so what's the problem?" Plaintiff responded, in sum and substance, "I

        simply would like more of a challenge and a change of pace."  Mr. Faison scoffed and

        stated, in sum and substance, "you realize that department is harder, you think you can do

that? You think you actually work hard?" Plaintiff was shocked by Mr. Faison's comment, to which she explained, in sum and substance, "I've never complained about the work. I've been here every day since I was hired and did everything you guys asked me to do." Mr. Faison's demeanor became more aggressive. To divert Mr. Faison's attention, Plaintiff asked to be left alone so that she could finish her work. Mr. Faison responded, in sum and substance, "you better watch your mouth. I don't know who you think you're talking to. I don't like your attitude. I oughta smack the shit out of you." Plaintiff was terrified and extremely uncomfortable.

37.   Later that evening, Plaintiff went made a complaint to her training supervisor, James Georges. In response, Mr. Georges stated that he would "take care of it." A few days later, Plaintiff approached Mr. Georges and asked him if he spoke to Mr. Faison, to which Mr. Georges laughed and responded "yeah."

38.   On or about June 14, 2020, Plaintiff transferred departments within Defendant AMERISOURCE.

39.   After her transfer, Plaintiff began working in the same area of the Location as "Alfonso."

40.   In or around late June 2020, "Alfonso" approached Plaintiff and asked for her phone number. Plaintiff immediately told him "no." Plaintiff was frustrated that she was being subject to more unwanted advances from her male co-workers.

41.   In or around mid-July 2020, after Plaintiff's late nightshift had ended, Plaintiff was walking to her vehicle in the Parking lot of the Location. "Alfonso" approached Plaintiff and asked her if she was able to give him a ride home. Nervous, Plaintiff ignored "Alfonso" and quickly left the parking lot.

42.     In or around late July 2020, after Plaintiff's late nightshift had ended, Plaintiff was in her car about to leave the Location.  Plaintiff looked up and saw "Alfonso" staring at her. Plaintiff was disturbed by "Alfonso's" strange behavior.

43.     In or around late July, still while ignoring Mr. Weston's advances, Mr. Weston began to appear more agitated that Plaintiff was not giving him the attention he desired.  Mr. Weston began walking near Plaintiff while loudly rapping about women who "think they are the shit."

44.     In or around mid-August 2020, Plaintiff was on her lunch break.  "Alfonso" approached Plaintiff and stated, in sum and substance "black on black love make pretty babies, so let's get together."  "Alfonso" was clearly referring to engaging in sexual relations with Plaintiff. Plaintiff was disgusted.

45.     In or around late August 2020, Plaintiff approached her supervisor, Joseph Tello, about the sexual harassment she was facing at the hands of Mr. Weston and "Alfonso."  Mr. Tello stated that he would look into it.

46.     Shortly thereafter, Plaintiff's other supervisor, Chris Murphy, approached Plaintiff to ask why she made the complaints.  Plaintiff informed Mr. Murphy that Mr. Weston and "Alfonso" made disgusting, inappropriate comments to her. Mr. Murphy responded, in sum and substance "those are good examples," however, did not inquire further.  Mr. Murphy suggested that Mr. Weston's lunch break times change so that Plaintiff and Mr. Weston would not have to unnecessarily interact with each other.  Despite the suggestion, Mr. Weston and Plaintiff still had the same break time.

47.     In a continued attempt to cease the sexual harassment she was facing by "Alfonso" and Mr. Weston, Plaintiff made a complaint to Defendant AMERISOURCE's Human Resources

Department about the unwanted sexual advances and harassment she was facing on an almost daily basis.

48.    A few days later, Mr. Murphy approached Plaintiff to inform her that "Alfonso" was let go, and explained, in sum and substance, "There were other complaints made against Alfonso. Alfonso wasn't in the right state of mind while working. Hasani [Weston] is different." Plaintiff was informed that her complaints regarding Mr. Weston were unsubstantiated and uncorroborated, but "if anything happens, [Plaintiff] should let [Mr. Murphy] know." Plaintiff felt defeated and frustrated that she had to continue to work with her harasser.

49.    Feeling that she had no other recourse, Plaintiff asked her two colleagues to speak to Mr. Weston and tell him to stop bothering her and to stay away from her.

50.    After Plaintiff made the aforementioned complaint to Human Resources, Mr. Weston began to impede Plaintiff's ability to successfully perform her work. For example, Plaintiff often drove a machine to transport items within departments in the Location. At times, Mr. Weston had moved his machine into the path of Plaintiff's machine, in an attempt to block Plaintiff's ability to travel to her respective department.

51.    Other times, while Plaintiff was on her machine, Mr. Weston purposefully crossed into Plaintiff's path in short distance of her machine, which caused Plaintiff to almost strike Mr. Weston. It was clear that Mr. Weston was making it difficult for Plaintiff to work because she was declining his unwanted advances, as well as her complaints to Human Resources.

52.    Shortly after Mr. Weston began impeding Plaintiff's ability to successfully perform her job duties, Plaintiff informed her supervisor, John Aluetta, of what was occurring. Specifically, Plaintiff stated "can you handle this Hasani situation? I'm trying to work peacefully and

his petty antics claiming I don't honk while traversing to and from [the] OSR [department] are absolutely testing my patience." Mr. Aluetta stated, "Ok I got it." There was no follow up to Plaintiff's complaint, and no change in Mr. Weston's behavior.

53.    In or around early January 2021, Plaintiff was on her lunch break in the breakroom.  While Plaintiff was eating her meal, Mr. Weston approached Plaintiff, stood behind Plaintiff and was only mere inches away from her.  Mr. Weston was so close to Plaintiff that she was unable to move her chair to leave the area.  While Mr. Weston was in an uncomfortably close proximity to Plaintiff, Plaintiff's two supervisors, Mr. Murphy and Mr. Aluetta were present and did not interject or otherwise stop Mr. Weston, despite Plaintiff's prior complaints of Mr. Weston's sexual harassment. Plaintiff was extremely anxious and uncomfortable.  Plaintiff believed that Mr. Weston was attempting to intimidate her in response to making her complaints of his continued unwanted sexual harassment.

54.    In or around January 2021, all employees within Plaintiff's department at Defendant AMERISOURCE engaged in training related to anti-sexual harassment.

55.    In or around late February 2021, Plaintiff was walking in the locker hallway of the Location.  Mr. Weston and two male co-workers began making fun of the way Plaintiff walks, and stated she was pigeon toed.  Laughing, Mr. Weston immediately stated, in sum and substance, "be careful talking to her. If you talk to her, you'll catch a case with HR." Plaintiff felt humiliated and believed she was being retaliated against for having made a complaint.

56.    In or around late February 2021, Plaintiff was on her lunch break.  At the same time, Mr. Weston and two other co-workers were in the break room having a loud discussion. Plaintiff heard Mr. Weston state, in sum and substance "I find women online like dating

apps, and I choose them based on how they look, and their vibes. Then I have sex with them." Plaintiff then heard Mr. Weston graphically describe how he would have sexual relations with various women. Plaintiff was disgusted and offended, especially considering they recently engaged in anti-sexual harassment training approximately one month ago.

57.   On or about February 26, 2021, Plaintiff again contacted Human Resources to complain about Mr. Weston's continued unwanted conduct.

58.   On or about March 1, 2021, Martha Fernandez, a Human Resources representative of Defendant AMERISOURCE, contacted Plaintiff to gather more information regarding her complaints of Mr. Weston.   Plaintiff emphasized to Ms. Fernandez that she wanted to inform her of what was occurring with Mr. Weston not only because she was uncomfortable, but because the anti-sexual harassment training was still fresh in her mind.

59.   On or about March 3, 2021, Ms. Fernandez contacted Plaintiff to inform her that she conducted an investigation and Plaintiff's "allegations and claims are unsubstantiated and cannot be corroborated." Plaintiff was devastated.

60.   On or about March 8, 2021, Plaintiff was replenishing stock at the Location and accidentally cut the product while opening a box, ultimately damaging the product.  As a result, Plaintiff received a "corrective action" from Mr. Aluetta.  Plaintiff explained that she did not realize that she cut open the product.  After receiving the "corrective action," Mr. Aluetta followed up with Plaintiff and stated, in sum and substance, "after more research you may be receiving another [corrective action] which could lead to termination, but I'm not sure what is going to happen after this meeting."  Plaintiff became nervous as she never received a warning at her job before and did not want to be terminated.

61.     Upon information and belief, the policy of Defendant AMERISOURCE is that employees who face allegations of misconduct first receive a verbal warning, if there is a second allegation of misconduct employees receive a written warning, and if there is a third allegation of misconduct, employees would be terminated.

62.     This was Plaintiff's first allegation of misconduct and, as such, she should have received a verbal warning instead of a written corrective action.

63.     On or about March 10, 2021, Plaintiff e-mailed Katie Fisher from Defendant AMERISOURCE's Human Resources Department asking about the company policy surrounding damaged products.  Plaintiff explained what had occurred a few days prior and explained that she received a written warning from her supervisor.

64.     On or about March 11, 2021, Tarsha McNeil, a Human Resources representative from Defendant AMERISOURCE, e-mailed Plaintiff indicating that her corrective action will be rescinded and there would be additional training to her and her fellow co-workers. It was clear that the corrective action that Plaintiff received was retaliatory based on her prior complaints of harassment.

65.     On or about March 14, 2021, Plaintiff and Mr. Aluetta had a meeting concerning Plaintiff's performance evaluation. Mr. Aluetta stated that Plaintiff was doing an amazing job and to keep up the good work.

66.     On or about March 17, 2021, Plaintiff was on her machine taking pallets from one department to another department in order to replenish supplies.  During the course of her shift, Plaintiff noticed that the pile of pallets kept disappearing.  Plaintiff was confused. However, shortly after, Plaintiff observed Mr. Weston removing the pallets from her

designated pile and placed them in another department where she would not be able to retrieve them.

67.    Frustrated, Plaintiff went to Mr. Murphy's office and explained what happened. Plaintiff stated that she was unable to do her job because Mr. Weston continued to block her from doing so.  Mr. Murphy stated, in sum and substance "I don't understand what the problem is. You came in here irate. I don't understand why you have a problem with Hasani because you never talked to me about it. You never spoke to me about Hasani." Plaintiff was in shock and stated, in sum and substance, "I never spoke to you about it?!" Mr. Murphy responded, in sum and substance "what, seven months ago? There was an investigation and that was closed and done with. It doesn't matter."

68.    Plaintiff was unable to continue successfully performing at her job due to the sexual harassment and retaliation she was facing.  As such, Plaintiff walked into Mr. Aluetta's office and resigned.

69.    Plaintiff was constructively discharged.

70.    The above are just some of the acts to which Defendant subjected Plaintiff on a regular and continuing basis while employing Plaintiff.

71.    Defendant AMERISOURCE knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

72.    Defendant AMERISOURCE created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform her job.

73.    Plaintiff was treated differently due to her sex/gender.

74.    Plaintiff was repulsed, offended, humiliated, belittled and disgusted by this blatantly unlawful sexual harassment and hostile work environment.

75.    Plaintiff was subjected to such a discriminatory, harassing and abusive work environment that no reasonable person in Plaintiff's shoes should or could be expected to endure.

76.    Defendant AMERISOURCE acted intentionally and intended to harm Plaintiff.

77.    Plaintiff has been unlawfully discriminated against, humiliated, degraded, and belittled, and as a result, suffers loss of rights, emotional distress, loss of income and earnings.

78.    Defendant AMERISOURCE acted maliciously, willfully, outrageously, and with full knowledge of the law.

79.    Upon information and belief, Plaintiff's performance was above average and satisfactory while working for Defendant AMERISOURCE.

80.    Plaintiff has also suffered future emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

81.    Defendant AMERISOURCE acted, and continue to act, maliciously, willfully, outrageously, and with full knowledge of the law.

82.    As such, Plaintiff demands punitive damages as against Defendant AMERISOURCE.

## First Cause of Action for Discrimination
## Under Title VII

83.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*., for relief based upon the unlawful employment practices of Defendant AMERISOURCE. Plaintiff complains of Defendant AMERISOURCE's violation of Title VII's prohibition against discrimination and creating a hostile work environment in employment based, in whole or in part, upon an employee's sex.

85.    Defendant AMERISOURCE engaged in unlawful employment practices prohibited by 42

U.S.C. § 2000e *et seq*., by creating and maintaining a hostile work environment and

otherwise discriminating against Plaintiff because of her gender.

86.    Defendant AMERISOURCE violated the section cited herein as set forth.

**Second Cause of Action for Retaliation**
**Under Title VII**

87.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

88.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides, in

pertinent part, that it shall be unlawful employment practice for an employer:

>      (1)      to… discriminate against any of his employees…because he
> has opposed any practice made by an unlawful employment practice
> by this subchapter, or because he has made a charge, testified,
> assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

89.    Defendant AMERISOURCE violated the sections cited herein as set forth.

**Third Cause of Action for Discrimination**
**Under the New York State Executive Law**

90.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

91.    New York State Executive Law § 296(1) provides that:

>      It shall be an unlawful discriminatory practice: (a) For an employer
> or licensing agency, because of an individual's age, race, creed,
> color, national origin, sexual orientation, military status, **sex**,
> disability, predisposing genetic characteristics, familial status,
> marital status, or domestic violence victim status, to refuse to hire
> or employ or to bar or to discharge from employment such
> individual or to discriminate against such individual in
> compensation or in terms, conditions or privileges of employment.

14

92.     Defendant AMERISOURCE engaged in an unlawful discriminatory practice by creating and maintaining a hostile work environment and otherwise discriminating against Plaintiff because of her gender.

93.     Defendant AMERISOURCE violated the section cited herein as set forth.

**Fourth Cause of Action for Retaliation**
**Under the New York State Executive Law**

94.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

95.     New York State Executive Law § 296(7) provides that:

It shall be an unlawful discriminatory practice:

(e)   For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

96.     Defendant AMERISOURCE violated the sections cited herein as set forth.

97.     Plaintiff is entitled to the maximum amount allowed under this statute.

**Jury Demand**

98.     Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.*; and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.*, in that Defendant discriminated against Plaintiff and created a hostile work environment based on Plaintiff's sex/gender, and retaliated against Plaintiff due to the complaints of sexual harassment, resulting in her constructive discharge;

15

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated:  New York, New York
         June 13, 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By:   _____

Steven Fingerhut
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com

# EXHIBIT A

EEOC Form 161-B (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: **Ms. Amandayvette Jean-Charles**
**C/O Phillips & Associates**

**45 Broadway, Suite 430**

**New York, NY 10006**

From: **New York District Office**
**33 Whitehall St ,5th Floor**
**New York, New York 10004**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2021-04553** | **Gwendolyn Hoy,**<br>**Investigator** | **929-506-5313** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

    More than 180 days have passed since the filing of this charge.

    The EEOC is terminating its processing of this charge.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

for

Enclosures(s)

**Judy Keenan,**
**District Director**

*(Date Mailed)*

cc:  **Jennifer Healy**
    **Counsel for Respondent**
    **AMERISOURCEBERGEN DRUG CORPORATION**
    **1300 Morris Drive**
    **Wilmington, DE 19801**

Enclosure with EEOC
Form 161-B (11/09)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*